STATE OF HAWAII, Plaintiff-Appellee,
*v.* SUI FAAFITI, also known as Fesuiaigamalifou
Faafiti and Fasuiaigamalifou Faafiti, Defendant-
Appellant

No. 5365

August 29, 1973

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY ABE, J.

In the early morning hours of November 3, 1971, a

fight broke out in the parking lot of the Dunes night club on Nimitz Highway, Honolulu, involving the defendant, Sui Faafiti, his friends and several servicemen.

The defendant was charged with and tried for having committed the offense of aggravated battery upon Terrence Grady and Ira Haskins, two of the servicemen. The jury convicted him of aggravated battery against Terrence Grady and acquitted him of the offense against Ira Haskins. Judgment and sentence was entered accordingly and the defendant appealed.

## I.

The defendant contends that his native language is Samoan; that as he has difficulty understanding and speaking the English language, he had the right to testify with the aid of an interpreter; and, that when his request for the services of an interpreter was denied, he was denied due process of law.

It is general law that where a defendant cannot understand and speak English, the judge is required to appoint an interpreter to aid a defendant. Otherwise, a trial held in his presence would be meaningless to him and would violate our concept of due process, as he would not be given his day in court. *Landeros* v. *State*, 480 P.2d 273 (Okla. Cr. 1971) ; *Parra* v. *Page*, 430 P.2d 834 (Okla. Cr. 1967) ; *United States ex rel. Negron* v. *State of New York*, 310 F. Supp. 1304 (E.D. N.Y., 1970), *aff'd* 434 F.2d 386 (2nd Cir. 1970).

The defendant's contention, however, is not that he cannot understand and speak the English language but that he was "not completely familiar with English" and that the court was required to appoint an interpreter to aid him at the trial. We do not agree with the defendant that whenever a defendant "is not completely familiar with English," upon his request as a matter of right he is entitled to an interpreter. In the first place, how many of us even though educated in the United States are

*completely* familiar with the English language?[1] We believe that the fair and correct rule is that where a defendant has some knowledge of English and he is reasonably able to converse in English, it is within the discretionary power of the trial court whether to appoint or not to appoint an interpreter. *Perovich* v. *United States,* 205 U.S. 86, 91 (1907); *State* v. *Kabinto,* 106 Ariz. 575, 480 P.2d 1 (1971); *Suarez* v. *United States,* 309 F.2d 709 (5th Cir. 1962).

Although the defendant did not speak grammatically correct English, upon review of the transcript of the defendant's testimony, we are satisfied that he had sufficient command of the English language to understand questions posed during the proceedings and to convey his thoughts to the jury, and we hold that the trial judge did not abuse his discretion.

## II.

The defendant next contends that the trial judge erred in admitting into evidence the transcribed testimony of Ira Haskins given at the preliminary hearing.

There is no question that a defendant in a criminal case has a fundamental or constitutional right to be confronted with and to cross-examine witnesses against him. *Pointer* v. *Texas,* 380 U.S. 400 (1965); *California* v. *Green,* 399 U.S. 149 (1970); *Territory* v. *Gusman,* 36 Haw. 42 (1942).

The hearsay rules of evidence and the confrontation clauses of our constitutions[2] we recognize are generally designed to avoid similar evils; however it is not correct to surmise that the overlap of the two doctrines of law is so complete that the confrontation clause is nothing more than a codification of the hearsay rules of evidence.

---

[1] This fact is substantiated in decisions of this court and other supreme courts which show obvious grammatical errors.

[2] Sixth Amendment, United States Constitution, Art. I, Sec. 11 Hawaii State Constitution.

As stated by the United States Supreme Court in *California* v. *Green, supra* at 155-56:

> Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. See *Barber* v. *Page*, 390 U.S. 719 (1968); *Pointer* v. *Texas*, 380 U.S. 400 (1965). The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied.

It is also to be noted that the confrontation clause was incorporated into the United States Constitution as the Sixth Amendment to prevent the despised practice of having an accused tried primarily on "evidence" consisting solely of ex parte affidavits, and depositions, and to give the accused the right to demand that his accusers, *i.e.*, witnesses against him, be brought to face him.[3]

Thus, "[t]he primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he

---

[3] J. Stephen, A History of the Criminal Law of England at 236 (1883); see also 9 W. Holdsworth, A History of English Law at 225, 228 (3d ed. 1944).

The trial of Sir Walter Raleigh for treason in 1603 is a famous example. It appears that the crucial evidence against him consisted of statements of Cobham implicating Raleigh in a plot to seize the throne. Subsequently Raleigh had received a written retraction from Cobham which made him believe that Cobham would testify on his behalf. Raleigh was not permitted to call Cobham as a witness and Raleigh was convicted. 1 J. Stephen, *supra* at 333-336; 9 W. Holdsworth, *supra* at 216-217, 226-228.

gives his testimony whether he is worthy of belief." *Mattox* v. *United States,* 156 U.S. 237, 242-43 (1895).

The United States Supreme Court in *Mattox v. United States, supra,* held that prior testimony given at a defendant's first trial by a witness, who had died subsequently, was admissible at the second trial and did not violate the confrontation clause.

In *California* v. *Green,* 399 U.S. 149, 165 (1970), the United States Supreme Court ruled that a transcript of testimony given at a preliminary hearing was admissible and did not violate the Confrontation Clause. It stated that the witness Porter's

> . . . statement at the preliminary hearing had already been given under circumstances closely approximating those that surround the typical trial. Porter was under oath, respondent was represented by counsel— the same counsel in fact who later represented him at the trial; respondent had every opportunity to cross-examine Porter as to his statement; and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings. Under these circumstances, Porter's statement would, we think, have been admissible at trial even in Porter's absence if Porter had been actually unavailable, despite good-faith efforts of the State to produce him.

Here, in spite of the defendant's contention that "preliminary hearing in Hawaii is limited to question of probable cause" the transcript of the testimony of the witness on cross-examination shows that the defendant's present attorney, who was also his attorney at the preliminary hearing, questioned the witness extensively and thoroughly.[4]

---

[4]Further, there is no statute or rule of court to prevent a defense attorney from extensively and thoroughly cross-examining a witness at a preliminary hearing. We also advise the district judges to permit the counsel for a defendant to examine fully and thoroughly witnesses at all preliminary

The record shows that witness Ira Haskins was shipped out from Hawaii during the latter part of December, 1971, after he had testified at the preliminary hearing on December 1, 1971. It also shows that the State on June 7, 1972, made a request to the proper military authority to have the witness brought back to Honolulu to testify, but this request was denied.

Upon the record of this case, the trial judge correctly ruled that the transcript of the testimony given at the preliminary hearing was admissible under the standards of *California* v. *Green, supra*.

## III.

The defendant also argues that the trial judge erred in refusing to permit witness Ingrid Nelson to give any testimony concerning the defendant's character, particularly as to a trait of peacefulness or as to a non-violent temperament. Defendant has a clear right to introduce evidence of personal character traits associated with the basic nature of the offense with which he is charged.[5] 1 Wigmore, *Evidence* § 59. In defending against a charge of aggravated battery, evidence of peaceful and non-violent character is obviously of the greatest relevance.

However, evidence is often relevant and yet still inadmissible. While defendant offers two theories which arguably make the testimony admissible, we can find no error under either theory that requires a reversal of the

hearings. We also believe that contrary to statements made by some other courts, an extensive cross-examination of a witness (for the prosecution) will not in most cases divulge the hands of defendants and will not amount to a forced discovery upon defendants of their plan or strategy for defense.

[5]It is to be noted that we stated in *State* v. *Santiago*, 53 Haw. 254, 256-57, 492 P.2d 657, 659 (1971), that "[i]t is the law in virtually every state that evidence of prior convictions may not be admitted in order to show that the defendant has a criminal propensity and is likely to have committed the crime charged." If that is so, why should opinion testimony of a witness either as to the good or bad reputation of an accused be admitted in evidence to show either the lack of criminal propensity and unlikeliness of his having committed the crime charged or vice versa? Thus, should testimony as to a defendant's reputation and character have a place in our criminal judicial system?

conviction because of the trial judge's ruling.

Evidence of the defendant's reputation in the community in which he lives and works has long been recognized as admissible, but only where the witness is thoroughly familiar with the general consensus of the relevant community. The competence of a witness, in this, as in other respects, is a matter to be decided by the trial judge. Here, the judge ruled that the witness Ingrid Nelson was not qualified to give testimony as to the defendant's reputation in the community because of insufficient basis for knowledge.[6] Both defendant and witness must have been members of the relevant community for a period of time sufficient to permit slow development of an accurate impression of character. *Michelson* v. *United States,* 335 U.S. 469, 477-78 (1948); *Roberts* v. *Commonwealth,* 350 S.W.2d 626 (Ky. 1961). The appropriate length of time varies with the individual, the community, and the relevant character trait. Hence, the period of time must be determined in the discretion of the trial judge. *Gage* v. *United States,* 167 F.2d 122 (9th Cir. 1948); *United States* v. *Trollinger,* 415 F.2d 527 (5th Cir. 1969); *People* v. *Paisley,* 214 Cal. App. 2d 225, 29 Cal. Rptr. 307 (1963). Absent an abuse of discretion, we will not reverse the trial judge's ruling on the matter. *People* v. *Workman,* 136 Cal. App. 2d 898, 289 P.2d 514 (1955).

Defendant also urges that, in accordance with the views of the commentators, *e.g.,* 7 Wigmore, *Evidence* § 1986, and with recent trends in the law, *e.g.,* Rule 405, *Proposed Rules of Evidence for United States Courts and*

---

[6]The witness worked at the Dunes three nights a week during the period that the defendant was employed as a doorman-bouncer prior to the incident giving rise to criminal charges. This period of defendant's employment was five or six weeks. Some conversations with other employees about defendant, other conversations overheard, and "general talk" are the entire basis for the witness's knowledge of that "community's" general consensus on defendant's character. The State objected to the testimony proffered because of defense counsel's inability to lay the proper foundation for its admissibility under these facts. The objection was sustained.

*Magistrates,* we adopt a rule that makes admissible personal opinion testimony as to an accused's character. We leave this issue until another day because we find that even if we did adopt the proposed rule of evidence, there is still no reversible error in the judge's ruling. Proffered testimony of the witness's personal opinion as to defendant's character traits was also excluded by the judge by his sustaining an objection by the State. In cases from other jurisdictions that have held opinion evidence admissible, such evidence has been said to be competent when given by those who have had "an opportunity to form, and who have formed, an opinion as to the character of the accused with respect to the traits in issue," *State* v. *Blake,* 157 Conn. 99, 249 Atl. 2d 232, 235 (1968) (dictum). Otherwise stated, testimony of the character witness should show that the witness was "sufficiently acquainted with the defendant" to be able to testify on character matters. *State* v. *Ferguson,* 222 Iowa 1148, 1161-2, 270 N.W. 874 (1937). Since receipt of this type of opinion evidence is subject to the same rules as is other opinion evidence and is admissible largely in the discretion of the trial court, *State* v. *Mayhew,* _____ Ia. _____ 170 N.W.2d 608, 619 (1969), and since we can find no abuse of discretion in excluding the testimony of a witness who the judge apparently felt had had insufficient opportunity to form a meaningful opinion about defendant's character, there is no reversible error.

On the matter of character witnesses for defendant, it should be noted that another witness for the defendant, Alice Tamura, cashier and assistant manager of the Dunes, was permitted to testify that the defendant's reputation for "character of peaceableness and nonviolence at the Dunes" was good. This fact further bolsters our opinion that the error, if any, in exclusion of the testimony of witness Ingrid Nelson was not reversible, because, if it was error at all, it was also harmless.

## IV.

The defendant next contends that the trial judge erred in refusing to charge the jury with the instruction he requested as follows:

> A person who is threatened with an attack that justifies the exercise of the right of self-defense, may stand his ground, and meet force with force. This law applies even though the assailed person might more easily have gained safety by flight or by withdrawing from the scene.

The defendant in his argument before this court contended that the trial judge erred when he refused to give the requested instruction as the defendant had the right to stand his ground and meet force with force, when he is attacked in his home or at his place of employment, and such was the case here. However, the requested instruction quoted above is silent on the point of law now being urged by the defendant because nothing is mentioned in the instruction as to where the attack occurred. As submitted, the instruction appears incorrect. But, even treating it as an instruction on the general rule of self-defense, and even assuming arguendo that it correctly states the law of this jurisdiction, the trial judge did not err in refusing to give the instruction because we are satisfied that the trial judge correctly and fully charged the jury on the issue of self defense in this case when he read the following instructions:

> Under the law of self-defense, it is lawful for a person who is being assaulted to defend himself from attack if, as a reasonable person, he has grounds for believing and does believe that bodily injury is about to be inflicted upon him. This right of self-defense is the same whether such expectation is real or merely apparent to a reasonable man. In doing so he may use all force and means which he believes to be reasonably

necessary and which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent.

In connection with self-defense, the court further instructs you as follows: If you find that the defendant has produced evidence that he acted in self-defense, so that you are satisfied that the defendant has raised a reasonable doubt as to his guilt, then you must acquit him.

The kind and degree of force which a person may lawfully use in self-defense are limited by what a reasonable person in the same situation as such person, seeing what he sees and knowing what he knows, then would believe to be necessary. Any use of force beyond that is regarded by the law as excessive. Although a person may believe that he is acting, and may act, in self-defense, he is not justified in using a degree of force clearly in excess of that apparently and reasonably necessary under the existing facts and circumstances.

You are instructed that the right of self-defense lasts only as long as the necessity, real or apparent for it exists.

## V.

We have also considered the other points raised on appeal and find them without merit.

Affirmed.

*James T. Leavitt, Jr.* (*Hart, Sherwood, Leavitt, Blanchfield* and *Hall* of counsel) for defendant-appellant.

*Douglas H. Ige*, Deputy Prosecuting Attorney (*Barry Chung*, Prosecuting Attorney, with him on the brief), for plaintiff-appellee.