STATE OF HAWAI'I, Plaintiff-Appellee,
v.
ARTHUR VINHACA, Defendant-Appellant.
No. 28571
Intermediate Court of Appeals of Hawaii.
April 29, 2009.
On the briefs:
Linda C.R. Jameson for Defendant-Appellant
Tracy Murakami, Deputy Prosecuting Attorney, County of Kauai, for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
(By: WATANABE, Presiding Judge, NAKAMURA, and FUJISE, JJ.
Defendant-Appellant Arthur Vinhaca (Vinhaca) appeals from the Judgment entered on April 30, 2007, by the Circuit Court of the Fifth Circuit (circuit court).[1] The State of Hawai'i (State) charged Vinhaca with seventeen counts, arising from Vinhaca's alleged physical and sexual abuse of his two minor daughters, Daughter 1 and Daughter 2, between 2003 and 2005. At the time of the alleged offenses, Daughter 1 was eleven and twelve years old and Daughter 2 was fourteen and fifteen years old.
Following a jury trial, Vinhaca was found guilty as charged of one count of first-degree sexual assault, in violation of Hawaii Revised Statutes (HRS) § 707-730(1)(b) (Supp. 2008);[2] one count of first-degree attempted sexual assault, in violation of HRS §§ 707-730 (1) (b) and 705-500[3] (1993); one count of second-degree assault, in violation of HRS § 707-711 (1) (d) (1993);[4] and eight counts of third-degree sexual assault, in violation of HRS § 707-732 (Supp. 2008).[5] The circuit court sentenced Vinhaca to a combined total of forty years of incarceration and also imposed mandatory minimum terms of imprisonment.

I.
Daughter 1 and Daughter 2 both testified against Vinhaca at his preliminary hearing. Daughter 2 testified that prior to June 2005, she and Daughter 1 were living at home with their parents. According to Daughter 2, during that time, Vinhaca repeatedly sexually assaulted Daughter 2 by touching and sucking on her breasts, touching her "private parts," and laying on her, putting "his private between [her] legs" through her clothes, and moving up and down. Beginning when Daughter 2 was fourteen years old, Vinhaca would play the "whistle game" in which he would twist Daughter 2's nipples until she whistled to make him stop. One day when Vinhaca and Daughter 2 were fixing Vinhaca's car, Vinhaca hit Daughter 2 over the head with a wrench because she did not clean his tools well enough.
Daughter 1 testified at the preliminary hearing that Vinhaca started sexually abusing her when she was eleven years old. According to Daughter 1, Vinhaca would rub Daughter 1's genital area with his hand, stick his finger into her genital opening, and touch her buttocks. On two occasions, Vinhaca removed Daughter 1's clothing, then laid naked on top of her, touched her, and put his penis into her genital opening. Vinhaca also played the "whistle game" with Daughter 1.
Both Daughter 1 and Daughter 2 testified at the preliminary hearing that the abuse stopped when they were removed from their parents' house in June 2005.
At Vinhaca's trial, Daughter 2 recanted her preliminary hearing testimony and denied her prior allegations of physical and sexual abuse. When asked how she felt about testifying against her father, she stated, "There is nothing to testify about." Portions of Daughter 2's preliminary hearing testimony were admitted at trial (through playing an audio tape of the testimony) as a prior inconsistent statement, pursuant to Hawaii Rules of Evidence (HRE) Rule 802.1(1) (1993).
Daughter 1 did not appear at the trial. The circuit court found that Daughter 1 was unavailable as a witness and admitted Daughter 1's preliminary hearing testimony pursuant to HRE Rule 804 (b) (1) (1993)[6] Vinhaca requested that the crossexamination portion of Daughter 1's preliminary hearing testimony not be presented to the jury and so only the audio tape of the direct examination portion was played.

II.
On appeal, Vinhaca argues that: 1) the circuit court violated his right of confrontation by admitting Daughter 1's preliminary hearing testimony because a) the circuit court erred in finding that Daughter 1 was unavailable to testify and b) Vindaca did not have a meaningful opportunity to cross-examine Daughter 1 at the preliminary hearing; and 2) the prosecutor's remarks during closing argument constituted prosecutorial misconduct. For the reasons set forth below, we affirm.
1. We conclude that the admission of Daughter 1's preliminary hearing testimony did not violate Vinhaca's right of confrontation. The confrontation clause of the Hawai'i and United States Constitutions is not violated by the admission of the testimonial hearsay statement of a witness where the witness is unavailable for trial and the defendant had a prior opportunity to cross-examine the witness about the statement. State v. Fields, 115 Hawai'i 503, 516, 527-28, 168 P.3d 955, 968, 979-80 (2007). A witness is "unavailable" in situations including where the declarant "[i]s absent from the hearing and the proponent of the declarant "[i]s statement has been unable to procure the declarant's attendance by process or other reasonable means." HRE Rule 804(a)(5) (1993).
2. The circuit court did not err in finding that Daughter 1 was unavailable. The State presented evidence that it had served Daughter 1's legal custodian, Karla Lynn Huerta, a social worker for the Department of Human Services, with a subpoena to bring Daughter 1 to trial. Huerta testified that she was unable to comply with the subpoena because Daughter 1 had run away and Daughter 1's whereabouts were unknown. Huerta stated that Daughter 1 had been residing in a group home but had run away and been returned to the group home on four occasions. Daughter 1 had most recently been returned to the group home about three weeks before trial, but within an hour had run away. Huerta had not been able to locate Daughter 1 despite efforts that included providing pictures of Daughter 1 to the juvenile delinquency program and having them publish a request for assistance in locating Daughter 1 in a newspaper; looking for Daughter 1 at her mother's home; and contacting Daughter 1's school, people in the community, and the police in an effort to ascertain her whereabouts. We conclude that the State established that Daughter 1 was unavailable and that it had made a good faith effort to secure her presence at trial. See HRE Rule 804 (a) (5); State v. Moore, 82 Hawai'i 202, 223, 921 P.2d 122, 143 (1996).
3. We also conclude that Vinhaca had an adequate opportunity to cross-examine Daughter 1 at the preliminary hearing, which satisfied the requirements of the confrontation clause. State v. Faafiti, 54 Haw. 637, 641-42, 513 P.2d 697, 701 (1973) (holding that the admission of the preliminary hearing testimony of an unavailable witness did not violate the confrontation clause); Moore, 82 Hawai'i at 225, 921 P.2d at 145 (upholding the admission of the supervised release hearing testimony of an unavailable witness under HRE 804 (b) (1) where the party against whom the testimony was offered had the opportunity and motive to develop the testimony). Vinhaca "urges [this] court to reevaluate the holdings of Moore and Faafiti in view of the realities of the circumstances surrounding a preliminary hearings." However, he provides us with no valid basis for ignoring these precedents. We also note that after Crawford v. Washington, 541 U.S. 36 (2004), other jurisdictions have held that admitting the preliminary hearing testimony of an unavailable witness does not violate the confrontation clause. E.g., United States v. Avants, 367 F.3d 433, 445 (5th Cir. 2004); State v. Young, 87 P.3d 308, 316-17 (Kan. 2004); State v. Aaron, 218 S.W.3d 501, 517 (Mo. Ct. App. 2007); State v. Henderson, 136 P.3d 1005, 1011 (N.M. Ct. App. 2006); Primeaux v. State, 88 P.3d 893, 905-06 (Okla. Crim. App. 2004); contra State v. Stuart, 695 N.W.2d 259, 265-67 (Wis. 2005) (holding that it was error to admit preliminary hearing testimony of unavailable witness where cross-examination was limited by state precedents to "issues of plausibility, not credibility"); People v. Fry, 92 P.3d 970, 976-80 (Colo. 2004) (en banc).
4. During closing argument, the prosecutor made the following comment:
[Daughter 2] says she's had no contact with her father except once since June 20th, 2005, but she did admit that she has seen and talked to her mom several times in the last week. Her word choice  [Daughter 2's] word choice on the stand yesterday, what did she say? My father's too strict. Who did that sound like? That was verbatim of what the defense attorney said in his opening statement.[7]
Defense counsel did not object to this comment at trial. However, on appeal, Vinhaca claims that the prosecutor engaged in misconduct through this comment by implying that defense counsel "coached" Daughter 2 to lie at trial. We conclude that the prosecutor's comments were not improper, much less plain error.
When considered in context, we conclude that the challenged remark did not imply that defense counsel coached Daughter 2. Instead, it suggested that Daughter 2's mother had pressured Daughter 2 to change her testimony to comport with Vinhaca's defense. It was Vinhacaf's theory of defense that his daughters had falsely accused him because he was too strict. In any event, even assuming, arguendo, that the prosecutor's remark was improper, it did not affect Vinhaca's substantial rights or deprive him of a fair trial. The improper implication that Vinhaca asserts on appeal was not clear enough to draw an objection from defense counsel. In addition, the prosecutor's comment was isolated and the circuit court twice instructed the jury that the statements and remarks made by counsel were not evidence. See State v. Klinge, 92 Hawai'i 577, 592-93, 994 P.2d 509, 524-25 (2000).

III.
We affirm the April 30, 2007, Judgment of the circuit court.
NOTES
[1] The Honorable Kathleen N. A. Watanabe presided. The case was initiated in the Family Court of the Fifth Circuit but was transferred to the circuit court.
[2] HRS § 707-730 (1) (b) provides:

(1) A person commits the offense of sexual assault in the first degree if:
. . . .
(b) The person knowingly engages in sexual penetration with another person who is less than fourteen years old[.]
[3] HRS § 705-500 provides in relevant part:

(1) A person is guilty of an attempt to commit a crime if the person:
. . .
(b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.
. . . .
(3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.
[4] At the time of the charged offense, HRS § 707-711 (1) (d) provided in relevant part:

(1) A person commits the offense of assault in the second degree if:
. . . .
(d) The person intentionally or knowingly causes bodily injury to another person with a dangerous instrument[.]
[5] HRS § 707-732 provides in relevant part:

(1) A person commits the offense of sexual assault in the third degree if:
. . . .
(b) The person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person;
(c) The person knowingly engages in sexual contact with a person who is at least fourteen years old but less than sixteen years old or causes the minor to have sexual contact with the person; provided that:
(i) The person is not less than five years older than the minor; and
(ii) The person is not legally married to the minor[. ]
[6] HRE Rule 804(b)(1) provides, in relevant part:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding,... at the instance of or against a party with an opportunity to develop the testimony by direct, cross, or redirect examination, with motive and interest similar to those of the party against whom now offered[.]
[7] During his opening statement, defense counsel stated that the evidence would show that Daughter 2 did not like Vinhaca because "he was strict" and that she fabricated the allegations of abuse so that she would be removed from her father's home.