905 P.2d 50

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Alejandro VENIEGAS, Defendant–Appellant.**

**No. 17302.**

Intermediate Court of Appeals of Hawai'i.

Aug. 8, 1995.

Certiorari Granted Aug. 28, 1995.

Certiorari Proceeding Dismissed Nov. 17, 1995.

Hayden Aluli, on the briefs, Honolulu, for defendant-appellant.

Donn Fudo, Deputy Pros. Atty., City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and KIRIMITSU, JJ.

BURNS, Chief Judge.

Defendant Alejandro Veniegas (Veniegas) appeals the First Circuit Court's July 14, 1993 Judgment, upon a jury's verdict, convicting him of Promoting a Dangerous Drug in the Second Degree, Hawai'i Revised Statutes (HRS) § 712–1242(1)(b)(i) (Supp.1992), and Unlawful Use of Drug Paraphernalia, HRS § 329–43.5(a) (Supp.1992).

The issue before us is whether the circuit court reversibly erred, on May 26, 1992, when it entered its Findings of Fact, Conclusions of Law and Order Denying Defendant's Motion to Suppress Evidence (May 26, 1992 Order).

We vacate the May 26, 1992 Order and the July 14, 1993 Judgment and remand for further proceedings consistent with this opinion.

## FACTS

On January 28, 1991, at or about six o'clock p.m., Honolulu police officers Mark Cricchio (Officer Cricchio) and Harvey Hisatake were monitoring traffic from the Pālolo Recreation Center parking lot. The officers observed Veniegas driving a white convertible Mustang automobile (Mustang) at a high speed around a corner. As the Mustang passed the officers, they observed that Veniegas was not wearing a seat belt. The officers pursued, and Veniegas stopped.

Officer Cricchio informed Veniegas that he was stopped because he was not wearing a seat belt. Officer Cricchio then asked Veniegas for his driver's license, no-fault insurance card, and the Mustang's registration. Veniegas explained that he did not have any of those items because he lost his wallet and the Mustang was rented by his friend. Veniegas offered his social security number and a traffic citation he had received the previous night. Officer Cricchio observed a long black case on the passenger seat of the Mustang.

Officer Cricchio returned to his police car and verified that Veniegas had a valid driver's license, the Mustang was owned by Budget Rent–A–Car, the Mustang had not been reported stolen, and the rental contract did not permit Veniegas to operate the Mustang. During this time, the officers observed Veniegas place some object underneath the front seat of the Mustang.

When Officer Cricchio returned to the Mustang, he ordered Veniegas out of it based on the following facts: (1) the rental contract did not permit Veniegas to operate the Mustang; (2) Veniegas had no driver's license in his immediate possession; (3) Veniegas did not exhibit a no-fault insurance identification card; and (4) Veniegas did not present the Mustang's registration. Officer Cricchio testified:

> I came back to the vehicle—upon the checks we had—I had dispatch check with Budget, Budget Rent–A–Car. And he in fact was not on the contract to drive that car. So based on that he had no driver's license although he had a valid license. He had nothing on his person, no insurance in the car, no registration in the car. I ordered him out of that car. He couldn't drive that car.

As Veniegas exited, Officer Cricchio noticed, on the driver's seat, two clear plastic bags containing a crystal-like substance, later identified to be methamphetamine. Veniegas stated, "That[']s not mine." Officer Cricchio testified that the seized evidence was not in plain view until he ordered Veniegas out of the Mustang. Officer Cricchio also noticed and recovered from the floor of the Mustang a dark blue shaving kit, containing several empty plastic bags and two glass pipes, each of which contained a "crystal like substance." Veniegas was then arrested.

On November 19, 1991, Veniegas was indicted as follows: Count I, Promoting a Dan-

gerous Drug in the Second Degree (Count I); Count II, Unlawful Use of Drug Paraphernalia (Count II); and Count III, Driving While Not Restrained by a Seatbelt Assembly (Count III).

On January 21, 1992, Veniegas filed a Motion to Suppress Evidence in which he contended that Officer Cricchio unlawfully ordered him out of the Mustang and, therefore, everything that followed was likewise unlawful. The circuit court's May 26, 1992 Order denied the motion.

On October 13, 1992, a jury found Veniegas guilty of Count III, but deadlocked on Counts I and II.

Upon retrial, a jury found Veniegas guilty of Counts I and II. The July 14, 1993 Judgment sentenced Veniegas to incarceration for ten years on Count I and incarceration for five years on Count II, the terms to run concurrently.

## DISCUSSION

■ Veniegas contends that the circuit court reversibly erred when it entered its May 26, 1992 Order denying his January 21, 1992 Motion to Suppress Evidence. We agree.

In *State v. Kim*, 68 Haw. 286, 711 P.2d 1291 (1985), the Hawai'i Supreme Court stated that "a police officer must have cause before ordering a driver out of a vehicle after a traffic stop[,]" and "a police officer must have at least a reasonable basis of specific articulable facts to believe a crime has been committed to order a driver out of a car after a traffic stop." *Id.* at 290, 711 P.2d at 1294.

HRS § 701–107(1) (1985) states in relevant part that "[a]n offense defined by this Code or by any other statute of this State for which a sentence of imprisonment is authorized constitutes a crime." In *Kim*, since the reason for the traffic stop, *i.e.*, making a right turn through a red light without first stopping or signaling the driver's intention to make a right turn, was not a crime, HRS §§ 291C–32, –84(b), and –161 (1985), and the police officer had no reasonable basis of specific articulable facts to believe a crime had been committed, the officer was not authorized to order the driver out of the car. *Id.*

In *State v. Bolosan*, 78 Hawai'i 98, 890 P.2d 685 (App.1994), *aff'd in part and rev'd in part*, 78 Hawai'i 86, 890 P.2d 673 (1995), we stated:

> In Hawai'i, unlike at the federal level, "[a] traffic violation in and of itself does not supply reasonable articulable facts to support an order to exit the vehicle." *Kernan v. Tanaka*, 75 Haw. 1, 38 n. 22, 856 P.2d 1207, 1226 n. 22 (1993). A police officer is not authorized to order a driver out of a vehicle after a traffic stop unless the officer has at least a reasonable basis to believe, based on specific articulable facts, that a crime has been committed, *State v. Kim*, 68 Haw. 286, 290, 711 P.2d 1291, 1294 (1985), or that the driver is armed and dangerous. *State v. Joao, Jr.*, 56 Haw. 216, 221, 533 P.2d 270, 274 (1985).

78 Hawai'i at 103, 890 P.2d at 690 (footnote omitted).

Some motor vehicle offenses are not crimes. HRS § 291–11.6, the statute mandating the use of seat belts while operating a motor vehicle upon any public highway, subjects the violator "to a fine of $20 for each violation[.]" HRS § 291–11.6(e) (Supp.1992).

On the other hand, many motor vehicle offenses are crimes. The subject of HRS Chapter 286 is "Highway Safety." At this time, it has fourteen parts. The subject of Part VI is "Motor Vehicle Driver Licensing[.]" HRS 286–136 is a part of Part VI which extends from HRS § 286–101 through HRS § 286–150. HRS § 286–136 (1985) states that "[w]hoever violates this part shall be fined not more than $1,000 or imprisoned not more than one year, or both." Consequently, a motor vehicle operator's failure to have a driver's license in his immediate possession, HRS § 286–116 (Supp.1992), and to exhibit a valid no-fault insurance identification card, HRS § 286–116 (Supp.1992), are crimes.

The subject of Part III is "Registration of Vehicles[.]" HRS § 286–61 is a part of Part III which extends from HRS § 286–41 through HRS § 286–80. HRS § 286–61 (Supp.1992) states in relevant part that "[a]ny person who violates any of the provisions of sections 286–41 to 286–60 shall be

fined not less than $5 nor more than $1,000 or imprisoned not more than one year, or both[.]" Consequently, a motor vehicle operator's failure to present the car's registration certificate, HRS § 286-47(3)(A) (1985), is a crime.

> However, in *Bolosan*, we noted that:
>
> Pursuant to HRS § 286-10 (1985) and HRS § 431:10C-117(a)(1) (Supp.1992), an officer who has grounds to arrest an individual for driving without a license or no-fault insurance is required to issue a summons or citation in lieu of physically taking the defendant to the police station or court, which is the customary procedure under HRS § 803-6 (1985).

*Id.* at 104, 890 P.2d at 691 (footnotes omitted).

In other words, with respect to crimes allegedly committed by the accused while operating a motor vehicle and for which the police officer is statutorily mandated to issue a summons or citation to the accused rather than to take him or her into custody, the police officer has no cause to order the accused to exit the motor vehicle and is not authorized to do so. In addition to the two statutes mentioned in *Bolosan* that mandate the issuance of a citation, we add HRS § 286-116(b) (Supp.1992)[1] and HRS § 291C-164 (1985).[2]

Driving Under the Influence of Intoxicating Liquor, HRS § 291-4 (Supp.1992), is a crime for which the police officer is not statutorily mandated to issue a summons or citation to the accused. Thus, in *Kernan v. Tanaka*, 75 Haw. 1, 856 P.2d 1207 (1993), the Hawai'i Supreme Court identified specific articulable facts constituting probable cause that authorizes a police officer to order the driver to exit the automobile for a field sobriety test. *Id.* at 39, 856 P.2d at 1226-27.

The sole reason why Officer Cricchio ordered Veniegas out of the Mustang was Officer Cricchio's reasonable belief that Veniegas was not authorized to operate it. On this basis, the circuit court denied Veniegas' pretrial Motion to Suppress Evidence. Conclusions of Law (COL) Nos. 2 and 3 state as follows:

> 2. From the aforementioned there was an insufficient basis to believe Defendant was authorized to drive the car and thus Officer Cricchio's ordering him out was proper.
>
> 3. Officer Cricchio's ordering Defendant out of his car being proper the two (2) clear plastic bags with the crystal-like substance were in plain view. Thus per *State v. Madamba*, 62 Haw. 453 [617 P.2d 76] (1980) they are not suppressible.

As noted above, a motor vehicle operator's failure to have his driver's license in his immediate possession, HRS § 286-116 (Supp.1992), to exhibit a valid no-fault insurance identification card, HRS § 286-116 (Supp.1992) and HRS § 431:10C-107(b) (1987 Special Pamphlet), and to present the car's registration certificate, HRS § 286-47(3)(A) (1985), are crimes. HRS §§ 286-61 (Supp. 1992), 286-136 (1985). With respect to these crimes, however, the police officer is statutorily mandated to issue a summons or citation to the accused rather than to take him or her into custody. HRS §§ 286-10 (1985), 286-116(b) (Supp.1992), and 431:10C-117(a)(1) (Supp.1992).

■ We *sua sponte* note another possibility. COL No. 2 states that "an insufficient basis to believe [Veniegas] was authorized to

---

1. HRS § 286-116(b) states as follows:
   (b) At any time a law enforcement officer finds a motor vehicle in operation by a driver not in possession of the no-fault or liability insurance identification card required under section 431:10C-107 and section 431:10G-106, the officer shall issue a citation with the earliest possible date for court appearance in every instance.

2. HRS § 291C-164 states as follows:
   Procedure upon arrest. Except when authorized or directed under state law to immediate-

ly take a person arrested for a violation of any of the traffic laws before a district judge, any authorized police officer, upon making an arrest for violation of the state traffic laws shall take the name, address, and driver's license number of the alleged violator and the registered license number of the motor vehicle involved and shall issue to the driver in writing a summons or citation, hereinafter described, notifying the driver to answer to the complaint to be entered against the driver at a place and at a time provided in the summons or citation.

drive the car" was a valid ground for ordering Veniegas out of the Mustang. The possibility is HRS § 708–836 (1985), which provides in relevant part as follows:

> **Unauthorized control of propelled vehicle.** (1) A person commits the offense of unauthorized control of a propelled vehicle if he intentionally exerts unauthorized control over another's propelled vehicle by operating the vehicle without the owner's consent. . . .
>
> \*    \*    \*    \*    \*    \*
>
> (4) Unauthorized control of a propelled vehicle is a class C felony.

Although Officer Cricchio ordered Veniegas out of the Mustang because Veniegas "couldn't drive that car[,]" neither he nor the State has contended that Veniegas violated HRS § 708–836. At the March 30, 1992 hearing, Officer Cricchio testified upon cross-examination in relevant part as follows:

> Q. Were you aware of any crime that the defendant had committed by using a rent-a-car that somebody else had rented?
>
> A. No.

It appears that the State agrees with our conclusion that a person who operates a rental automobile with the permission of the person renting it but without the authorization of the rental company is not thereby guilty of the Unauthorized Control of a Propelled Vehicle. Therefore, Veniegas could not have been lawfully ordered out of the Mustang on this basis.

■ In light of the above, we conclude that COL Nos. 2 and 3 are wrong. Because the exit order was unlawful, the subsequent plain view of, search for, and seizure of the incriminating evidence was tainted and must be suppressed. *State v. Joao*, 56 Haw. 216, 219, 533 P.2d 270, 273 (1975) (citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).

### CONCLUSION

Accordingly, we reverse the May 26, 1992 Order Denying Defendant's Motion to Suppress Evidence, and the July 14, 1993 Judgment.

WATANABE, and KIRIMITSU, JJ., concur.